UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

M.L.D. a minor, by ERICA CURRY,

Plaintiff,

1:16-CV-0598
(GTS/WBC)

v.

COMMISSIONER OF SOCIAL SECURITY

Defendant.

---

APPEARANCES: OF COUNSEL:

LAW OFFICE OF PETER MARGOLIUS — PETER MARGOLIUS, ESQ.
Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN. — FERGUS KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 12, 14.)

Currently before the Court, in this Social Security action filed by Erica Curry ("Plaintiff") on behalf of her minor son, M.L.D. ("Claimant") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are

the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, it is ordered that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

At the time of filing and at the time of his hearing, Claimant was an adolescent. (T. 15); 20 C.F.R. § 416.926a(g)(2). Claimant alleged disability consists of attention deficit hyperactivity disorder ("ADHD"), hearing loss, and a learning disorder. (T. 176.)

### B. Procedural History

On January 4, 2013, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on Claimant's behalf. (T. 73.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 8, 2014 Plaintiff and Claimant appeared before the ALJ, Michelle S. Marcus. (T. 47-72.) On August 27, 2014, ALJ Marcus issued a written decision finding Claimant not disabled under the Social Security Act. (T. 9-29.) On March 25, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. First, the ALJ found that Claimant was an "adolescent" at the time of filing and as "adolescent" at the time of the hearing pursuant to 20 C.F.R. § 416.926a(g)(2). (T. 15.) Second, the ALJ found that Claimant had not engaged in

substantial gainful activity since the application date. (*Id*.) Third, the ALJ found that Claimant suffered from the severe impairments of attention deficit hyperactivity disorder ("ADHD"), oppositional defiance disorder ("ODD"), and borderline intellectual functioning. (*Id*.) Fourth, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings"). (T. 16.) Fifth, the ALJ found that Claimant did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings. (T. 16-25.) Sixth, and finally, the ALJ concluded Claimant had not been disabled, as defined by the Social Security Act, since January 4, 2013, the date his application was filed. (T. 25.)

## II. THE PARTIES' BRIEFINGS

### A. Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes three arguments. First, Plaintiff argues the ALJ's determination that Claimant had less than a marked limitation in the domain of "Acquiring and Using Information" was not supported by substantial evidence. (Dkt. No. 9 at 3-4 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's determination that Claimant had less than a marked limitation in the domain of "Attending and Completing Tasks" was not supported by substantial evidence. (*Id*. at 4-5.) Third, and lastly, Plaintiff argues the ALJ's determination that Claimant had less than a marked limitation in the domain of "Interacting and Relating with Others" was not supported by substantial evidence. (*Id*. at 5-6.)

### B. Defendant's Argument

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes three arguments. First, Defendant argues substantial evidence supported the ALJ's finding that Claimant had a less than marked limitation in the domain of "Acquiring and Using Information." (Dkt. No. 10 at 6-9 [Def.'s Mem. of Law].) Second, Defendant argues substantial evidence supported the ALJ's finding that Claimant had a less than marked limitation in the domain of "Attending and Completing Tasks." (*Id*. at 9-10.) Third, and lastly, Defendant argues substantial evidence supported the ALJ's finding that Claimant had a less than marked limitation in the domain of "Interacting and Relating with Others." (*Id*. at 10-12.)

## III. RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003

WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the child will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a child functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See id*.

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate

expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV. ANALYSIS

In terms of the six functional equivalence domains, the ALJ found that Claimant had a "less than marked" limitation in the domains of: acquiring and using information; attending and completing tasks; interacting and relating with others; caring for yourself; and health and physical well-being. (T. 19-25.) The ALJ found that Claimant had no limitation in the domain of moving about and manipulating objects. (T. 22-23.)

### A. Acquiring and Using Information

In this domain, the ALJ considers how well Claimant acquires or learns information, and how well Claimant uses the information he has learned. 20 C.F.R. § 416.926a(g); SSR 09-3p. For example, an adolescent, like Claimant, should be able to use what he has learned in daily living situations without assistance, comprehend and express both simple and complex ideas, and should learn to apply these skills in practical ways that will help him enter the workplace after he finishes school. 20 C.F.R. § 416.926a(g)(v); SSR 09-3p.

In the domain of acquiring and using information, Claimant's math teacher opined that Claimant had "a serious problem" or "an obvious problem" in most activities. (T. 188.) The teacher opined that Claimant had "a serious problem" in his ability to: comprehend and do math problems; recall and apply previously learned material; and apply problem-solving skills in class discussions. (*Id*.) She opined Claimant had "an obvious problem" in his ability to: read and comprehend written material; understand and participate in class discussion; provide organized oral explanations and adequate

descriptions; express ideas in written form; and learn new material. (*Id*.) Claimant's teacher opined that he had "a slight problem" in his ability to: comprehend oral instructions and understand school and content vocabulary. (*Id*.)

On March 13, 2013, consultative examiner Kerry Brand, Ph.D., performed an intellectual evaluation and conducted a psychological evaluation. (T. 270-279.) Dr. Brand observed that Claimant was cooperative, friendly, relaxed, and comfortable. (T., 271.) Dr. Brand also observed that his attention and concentration fluctuated. (*Id*.)

Testing indicated that Claimant's verbal and performance scale IQs were at the borderline range. (T. 272.) Dr. Brand noted that Claimant had a strength in the area of working memory and did not have a specific reading/decoding learning disability. (*Id*.)

Dr. Brand opined that Claimant could attend to, follow, and understand age-appropriate directions and complete age-appropriate tasks. (T. 272, 278.) She stated that Claimant had a moderate to severe difficulty maintaining appropriate social behavior and moderate difficulty responding appropriately to changes in the environment. (T. 272-273, 278.) Dr. Brand opined that Claimant "may have" moderate difficulty learning in accordance to cognitive functioning and asking questions or requesting assistance in an age-appropriate manner. (T. 273, 278.) She also stated Claimant "may have" moderate difficulty being aware of danger and taking precautions and interacting adequately with peers and adults. (T. 273, 278.)

State agency medical consultants, J. Dambrocia, Psychology, and D. Bostic, Pediatrics, reviewed the medical record in April and May of 2013 respectively. (T. 80.) Based on the medical evidence in the record, including the teacher evaluation and Dr. Brand's records, Dr. Dambrocia opined that Claimant had a "less than marked"

limitation in the domain of acquiring and using information. (T. 79.) In making his determination, Dr. Dambrocia relied on the teacher evaluation, Dr. Brand's records and opinion, and Claimant's activities of daily living. (T. 80.)

The ALJ determined that Claimant had a "less than marked" limitation in the domain of acquiring and using information. (T. 20.) The ALJ reasoned that although Claimant's teacher determined he had serious limitations in this domain, Claimant's ability to work contradicted her opinion. (*Id*.) Indeed, Claimant testified that he was able to pay attention at work. (T. 63.) Claimant testified that he did not have concentration or focus problems at work because he enjoyed what he was doing. (T. 66.) He testified that he was able to take orders, make sandwiches, and run the cash register. (T. 55-57.) Further, the ALJ relied on the opinions of Drs. Brand and Dambrocia in making her determination. Specifically, the ALJ relied on Dr. Brand's opinion that Claimant could complete age appropriate tasks, follow and understand age appropriate directions, and had moderate difficulty learning at his level. (*Id*.) Dr. Dambrocia opined that based on the evidence in the record, Claimant had a "less than marked" limitation in this domain.

Plaintiff argues that the ALJ's determination was not supported by substantial evidence in the record and substantial evidence supported a finding of a "marked" limitation in this domain. (Dkt. No. 9 at 3-4 [Pl.'s Mem. of Law].) In support of her argument Plaintiff cites to a functional report, the teacher questionnaire, and intellectual testing. (*Id*.) To be sure, the functional report completed by Plaintiff on Claimant's behalf indicated that Claimant had difficulty with math; making change; and understanding, carry out and remembering instructions. (T. 167.) The teacher

questionnaire, as outlined herein, also indicated Claimant had serious limitations in this domain. (T. 188.) And intellectual testing did reveal borderline intellectual functioning. (T. 272.) However, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Although there was evidence in the record could support Plaintiff's contention, substantial evidence supported the ALJ's determination that Claimant had a "less than marked" limitation in the domain of acquiring and using information. Here, the ALJ outlined the evidence in the record which supported her determination. Although Claimant's teacher indicated that he had limitations in his ability acquire and use information, the teacher nonetheless opined that Claimant had only a "slight problem" in comprehending oral instructions and understanding school and content vocabulary. (T. 188.) Further, despite borderline intellectual functioning, Dr. Brand opined that Claimant could attend to, follow, and understand age appropriate directions and complete age appropriate tasks. (T. 272.) Dr. Dambrocia opined that based on the teacher

evaluations, Dr. Brand's record, and Claimant testimony, he had a "less than marked" limitation in this domain. Further, in his functional report, Plaintiff indicated that Claimant could read and understand comics and cartoons, books, magazines, newspapers, spell words more than four letters, and tell time. (*Id*.) The function report also indicated that Claimant could: answer the telephone and make calls; repeat stories; tell jokes and riddles accurately; explain why he did something; use sentences with 'because,' 'what if,' or 'should have been;' asks for what he needs; and talk with family. (T. 166.) As outlined herein, Claimant testified that he was capable of working in a sandwich shop without difficulty. (T. 55-57, 66.)

Here, the ALJ properly outlined the evidence in the record and provided ample reasoning for her determination that Claimant had a "less than marked" limitation in the domain of acquiring and using information. Although there may be evidence in the record to support a different conclusion, the ALJ's determination must be sustained where the determination is supported by substantial evidence. *See Wojciechowski,* 967 F.Supp.2d at 605. The ALJ's determination was supported by the opinions of Drs. Brand and Dambrocia as well as Claimant's testimony as outlined herein; therefore, the ALJ's determination must be upheld.

**B. Attending and Completing Tasks**

In this domain, the ALJ considers how well Claimant is able to focus and maintain his attention, and how well he begins, carries through, and finishes activities, including the pace at which he performs activities and the ease with which he changes them. 20 C.F.R. § 416.926a(h); SSR 09-4p. Attending and completing tasks also refers

to Claimant's ability to avoid impulsive thinking and his ability to prioritize completing tasks and manage his time. 20 C.F.R. § 416.926a(h); SSR 09-4p.

The Regulations provide that an adolescent, such as Claimant, should be able to pay attention to increasingly longer presentations and discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects. 20 C.F.R. § 416.926a(h)(2)(v). Claimant should be able to organize his materials and to plan his time in order to complete school tasks and assignments. *Id*. In anticipation of entering the workplace, he should be able to maintain his attention on a task for extended periods of time, and not be unduly distracted by his peers or unduly distracting to them in a school or work setting. *Id*.

In the domain of attending and completing tasks, Claimant's teacher opined that he had "a very serious problem" or "a serious problem" in almost every specific domain activity. (T. 189.) The teacher opined that Claimant had "a very serious problem" in his ability to: refocus to task when necessary; carry out multiple step instructions; wait to take turns; change from one activity to another without being disruptive; complete class/homework assignments; complete work accurately without careless mistakes; work without distracting self or others; and work at a reasonable pace/finish on time. (*Id*.) She opined that Claimant had "a serious problem" in his ability to: pay attention when spoken to directly; focus long enough to finish assigned activity or task; carry out single-step instructions; and organize his own things or school materials. (*Id*.) She opined these problems occurred daily. (*Id*.)

Dr. Brand, as outlined above, ultimately opined that Claimant could attend to, follow, understand, and complete age appropriate tasks. (T. 272.) Dr. Brand indicated

Claimant may have a moderate difficulty learning new tasks. (T. 273.) Dr. Dambrocia opined that Claimant had a "marked" limitation in the domain of attending and completing tasks. (T. 79.)

The ALJ determined that Claimant had a "less than marked" limitation in the domain of attending and completing tasks. (T. 21.) The ALJ reasoned that although Dr. Dambrocia opined Claimant had a marked limitation in this domain, the opinion of Dr. Brand was more consistent with Claimant's testimony and daily activities. (*Id*.) The ALJ acknowledged that Claimant had limitations in this domain, but that those limitations did not "rise to the level" of a marked limitation. (*Id*.)

Plaintiff contends that the ALJ erred in finding a less than marked limitation in the domain of attending and completing tasks because substantial evidence in the record supported greater limitations. (Dkt. No. 9 at 4-5 [Pl.'s Mem. of Law].) Specifically, Plaintiff relies on the medical opinion of Dr. Dambrocia and the teacher questionnaire which indicated "very serious" or "serious" problems in this domain. (*Id*. at 5.)

Again, although substantial evidence may support Plaintiff's contention, if substantial evidence supported the ALJ's determination, the ALJ's determination must be upheld. *See Brault,* 683 F.3d at 448; *see also Wojciechowski,* 967 F.Supp.2d at 605 (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones,* 949 F.2d at 59 (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

In making her determination, the ALJ relied on Dr. Brand's opinion and Claimant's testimony. (T. 21.) The ALJ reasoned that Dr. Brand's opinion, that Claimant could complete age appropriate tasks, was more consistent with Claimant's testimony and activities. (*Id*.) Generally, the more consistent an opinion is with the record as a whole, the more weight the opinion will be given. 20 C.F.R. § 416.927(c)(4). The ALJ noted that Plaintiff testified that Claimant kept busy on his own, worked on projects, and maintained attention when playing video games. (T. 21, 38, 170.) The ALJ relied on Claimant's ability to hold down a job as evidence that he was able to attend and complete tasks. (T. 21.) The ALJ also noted that Claimant was not fired from any position and instead left positions in search of more hours. (*Id*.)

Indeed, the record as a whole supported the ALJ's determination. Although evidence in the record, such as Dr. Dambrocia's opinion, could support Plaintiff's contention, the ALJ's decision was nonetheless supported by substantial evidence in the record. The ALJ properly relied on the medical opinion of Dr. Brand and testimony in making her determination that Claimant had a less than marked limitation in attending and completing tasks.

**C. Interacting and Relating with Others**

In this domain, the ALJ considers how well Claimant initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i); SSR 09-5p.

An adolescent, such as Claimant, should be able to initiate and develop friendships with children of the same age; relate appropriately to children of all ages and

adults, both individually and in groups; be increasingly able to resolve conflicts between self and family members, peers, and others outside of family; recognizes that there are different social rules for dealing with other children than with adults; describe feelings, seek information, relate events, and tell stories in all kinds of environments and with all kinds of people; develop an increasing desire for privacy; and focus less attention on parents and more on relationships with peers. *See* SSR 09-5p.

In the domain of interacting and relating with others, Claimant's teacher opined that he had a "very serious problem" in his ability to: seek attention appropriately; express anger appropriately; ask permission appropriately; follow rules; respect/obey adults in authority; and use language appropriate to the situation and listener. (T. 190.) She opined Claimant had a "serious problem" in his ability to: relate experiences and tell stories; introduce and maintain relevant and appropriate topics of conversation; take turns in conversation; interpret meaning of facial expressions, body language, hints, sarcasm; and use adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. (*Id*.)

Dr. Brand observed that Claimant was cooperative and friendly during his examination and testing. (T. 271.) Dr. Brand opined that Claimant had moderate to severe difficulty maintaining appropriate social behavior and moderate difficulty responding appropriately to changes in the environment. (T. 273.) Dr. Brand further opined that Claimant "may have" moderate difficulty interacting adequately with peers and adults. (*Id*.) Dr. Dambrocia opined that Claimant had a "less than marked" limitation in this domain. (T. 79.)

The ALJ determined that Claimant had a "less than marked" limitation in the domain of interacting and relating with others. (T. 22.) The ALJ acknowledged the teacher's opinion; however, the ALJ found her opinion inconsistent with Claimant's ability to interact with others while working which required interaction with supervisors, co-workers, and the general public. (*Id.*) The ALJ also relied on Dr. Dambrocia's opinion that Claimant had a less than marked limitation in this area. (*Id.*)

Plaintiff contends that the ALJ erred in her determination that Claimant had a less than marked limitation in the domain of interacting and relating with others because substantial evidence in the record supported greater limitations. (Dkt. No. 9 at 5-6 [Pl.'s Mem. of Law].) In support of her argument Plaintiff relies on the opinion of Claimant's teacher and Dr. Brand. (*Id.*)

To be sure, Claimant's teacher opined that he had "very serious" or "serious" problems in almost every activity listed for this domain. (T. 190.) However, the ALJ properly reasoned that the teacher's opinion was inconsistent with other evidence in the record. *See* 20 C.F.R. § 416.927(c)(4). Namely, the teacher's opinion was inconsistent with Claimant's ability to maintain employment which required him to interact appropriately with supervisors, co-workers, and the public and inconsistent with Dr. Dambrocia's opinion. Of note, in making his determination that Claimant had a "less than marked" limitation in this domain, Dr. Dambrocia took into consideration Dr. Brand's opinion that Claimant had moderate difficulties interacting adequately with peers and adults. (T. 79-80.)

Here, substantial evidence in the record supported the ALJ's determination. The ALJ relied on the medical opinion of Dr. Dambrocia and Claimant's work activities.

Again, "[s]ubstantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). Further, a reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012). Although the record contained evidence that could support Plaintiff's contention, the ALJ's determination was supported by substantial evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: April 27, 2017

Bill Carter
William B. Mitchell Carter
U.S. Magistrate Judge